**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **XTREME CONCEPTS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:25-cv-00976** |
| | ) | **Judge Richardson** |
| **CKH CORPORATION f/s/o COLE HAUSER, COLE HAUSER, IN HIS INDIVIDUAL CAPACITY, FICTITIOUS DEFENDANT 1, AND FICTITIOUS DEFENDANT 2,** | ) | **Magistrate-Judge Newbern** |
| | ) | **Jury Demand** |
| **Defendants.** | ) | |
| | ) | **Answer, Counter-Complaint and Third Party Complaint** |
| **CKH CORPORATION,** | ) | |
| | ) | |
| **Counter-Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **XTREME CONCEPTS, INC.,** | ) | |
| | ) | |
| **Counter-Defendant, and** | ) | |
| | ) | |
| **LANDON ASH,** | ) | |
| | ) | |
| **Third-Party Defendant.** | ) | |

## ANSWER OF DEFENDANTS CKH CORPORATION AND COLE HAUSER TO COMPLAINT

COMES NOW Defendants CKH CORPORATION f/s/o COLE HAUSER ("CKH") and COLE HAUSER ("Hauser") (CKH and Hauser shall be collectively referred to as "Defendants"), by and through the undersigned Counsel, and states

for its Answer together with defenses to the Complaint of Plaintiff XTREME CONCEPTS, INC. ("Plaintiff" or "Xtreme"), as follows:

## INTRODUCTORY STATEMENT

This case arises from Xtreme's failure to perform under the Influencer Marketing Agreement (the "Influencer Agreement") dated May 17, 2023, between Xtreme and CKH for the services of Hauser. Instead of performing its obligations under the Influencer Agreement, Xtreme seeks to hold Defendants liable for Xtreme's failures to perform thereunder by asserting false and conclusory allegations that are directly contradicted by the language of the Influencer Agreement.

Hauser is a well-recognized celebrity who is particularly famous for his portrayal of the character named "Rip" on the popular television series *Yellowstone*. Capitalizing on Hauser's celebrity profile, Xtreme entered into the Influencer Agreement with CKH for the services of Hauser to perform promotional activities for a yet-to-be-formed company ("NewCo") that would manufacture, market, and distribute spice products, which would be owned 50/50 between Xtreme and CKH. Under the Influencer Agreement, Xtreme would pay CKH a guaranteed, pay-or-play fee of $1.5 million and manage the day-to-day operations of NewCo (including its formation), contributing the products (including 5 of Xtreme's existing spices), arrange for all manufacturing of products, and covering all costs of marketing, manufacturing, and distribution as well as other working capital.

Importantly, and directly contradictory to Plaintiff's allegations that Defendants represented that the name, image, and likeness of Hauser's character "Rip" could be used for one of NewCo's spice, paragraph 6(e) of the Influencer Agreement stated:

> For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone".

Xtreme paid the first $250,000 of the $1.5 million fee under the Influencer Agreement.

In August 2023, Hauser and his film crew traveled to Livingston, Montana, and met with Xtreme and a spice master to mix the first spice for NewCo while Hauser's film crew shot footage of the mixing process. The intention was that this footage would be used for commercials and Hauser's social media posts promoting NewCo and its products. Notably, Hauser paid for the film crew out of the first $250,000 payment from Xtreme under the Influencer Agreement.

Thereafter, nothing happened despite Hauser making multiple efforts to contact Xtreme and its CEO Landon Ash ("Ash"). Indeed, Xtreme and Ash ghosted Hauser. Despite it being its express obligations under the Agreement, Defendants are informed and believe that Xtreme did not take any action to form NewCo, finance NewCo, market or distribute products for NewCo, or contribute five of Xtreme's existing spices to NewCo.

CKH and Hauser were, at all times, ready, willing, and able to perform under the Influencer Agreement once Xtreme had created a company that had products to manufacture, market, and distribute which Hauser was to promote.

In January 2024, Xtreme contacted Hauser's entertainment lawyer requesting a way out of the Influencer Agreement. While foregoing the remaining $1.25 million owed on the "guaranteed" fee on a "pay-or-play" basis would have an impact on Defendants, they were willing to agree to allow Xtreme out of the Influencer Agreement in exchange for CKH keeping the $250,000 and doing a social media post on behalf Xtreme (as opposed to NewCo). Rather than responding to that fair proposal, Xtreme sent a letter demanding return of the $250,000 plus additional damages allegedly incurred by Xtreme relating to the unformed NewCo and non-distribution of products. For the next 15 months the Parties engaged in negotiations to restructure the Influencer Agreement. Xtreme would often become non-responsive for months at a time and then seek to change previously agreed upon deal terms. Then, Xtreme abruptly filed this action against CKH and Hauser.

## PARTIES

1. On information and belief, Defendants admit the allegations in paragraph 1 of the Complaint, which admission is based on a review of the public record.

2. Defendants admit that CKH Corporation is a California stock corporation that entered into an agreement with Plaintiff for the services of Cole

Hauser, but otherwise denies the remaining allegations in paragraph 2 of the Complaint.

3. Defendants admit that Hauser, individually, is an actor and social media influencer, but otherwise denies the remaining allegations in paragraph 3 of the Complaint.

4. A "John Doe" or "Fictitious Defendant" practice is not recognized. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 4 of the Complaint. Defendants deny that Defendants engaged in any misconduct or are liable to Plaintiff for any allegations or that Plaintiff is entitled to any of the relief requested or any other relief under any other theory.

5. A "John Doe" or "Fictitious Defendant" practice is not recognized. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 5 of the Complaint. Defendants deny that Defendants engaged in any misconduct or are liable to Plaintiff for any allegations or that Plaintiff is entitled to any of the relief requested or any other relief under any other theory.

6. The statements in paragraph 6 of the Complaint do not contain any allegations. Defendants deny that Defendants engaged in any misconduct or are liable to Plaintiff for any allegations or that Plaintiff is entitled to any of the relief requested or any other relief under any other theory.

## JURISDICTION AND VENUE

7. Defendants deny the allegations in paragraph 7 of the Complaint.

8. Defendants admit the agreement at issue in this case contains a venue specifying Davidson County, Tennessee, but otherwise deny the remaining allegations in paragraph 8 of the Complaint.

## FACTUAL BACKGROUND

9. Defendants object to paragraph 9 as being vague and conclusory and does not identify any of the specific agents and representatives to whom Defendants allegedly introduced Plaintiff. Defendants admit to introducing Plaintiff to an entertainment lawyer, Mr. Krintzman, but otherwise deny the allegations contained in paragraph 9 of the Complaint. Without limiting the foregoing, Defendants specifically deny that Defendants explicitly stated to Plaintiff that any agents or representatives had authority to speak for Defendants and for Plaintiff to take direction from them.

10. Defendants admit that Defendants met with Plaintiff in and around December 2022 and began discussions and negotiations for an endorsement deal between Plaintiff and Defendants wherein CKH would be paid a certain amount of money in exchange for Hauser promoting Plaintiff's businesses and products on social media, but otherwise deny the remaining allegations in paragraph 10 of the Complaint. Without limiting the foregoing, Defendants specifically deny: (i) that this December 2022 meeting involved

any of Defendants' agents or representatives; and (ii) that Defendants have "managing agents and representatives" as alleged in paragraph 10.

11. Defendants admit that Defendants and Plaintiff discussed the idea of forming a new company between Defendants and Plaintiff ("NewCo") wherein each party would own 50% of NewCo to create, among other products, a special food seasoning with Plaintiff contributing 5 seasonings from NewCo, but otherwise deny the remaining allegations in paragraph 11 of the Complaint. Without limiting the foregoing, Defendants specifically deny that Hauser's "representatives" pitched the idea of Newco.

12. Defendants admit that (i) on or about May 17, 2023, CKH and Plaintiff entered into an Influencer Marketing Agreement (the "Agreement") wherein Plaintiff agreed to pay CKH a certain amount of money in exchange for Hauser promoting NewCo's products on social media and television commercials, and (ii) Hauser plays a character named "Rip" on the popular television series *Yellowstone*, which airs primarily on the Paramount Network; but otherwise deny the remaining allegations in paragraph 12 of the Complaint. Without limiting the foregoing, Defendants specifically deny that Defendants pitched to Plaintiff the idea to brand the new seasoning "Rip's Rub," using a likeness of Hauser's character from Yellowstone. Indeed, paragraph 6(e) of the Influencer Agreement stated: "For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone"."

13. Defendants admit that Plaintiff signed the Agreement and paid CKH the first payment of $250,000, but otherwise deny the remaining allegations in paragraph 13 of the Complaint.

14. Defendants admit that Defendants and Plaintiff began developing a seasoning to be owned and promoted by NewCo, but otherwise deny the remaining allegations in paragraph 14 of the Complaint.

15. Defendants deny the allegations contained in paragraph 15 of the Complaint. Without limiting the foregoing, Defendants specifically deny that Defendants assured Plaintiff that Defendants had the right to use the name, image, or likeness of Hauser's character "Rip" for the new seasoning. Indeed, paragraph 6(e) of the Influencer Agreement stated: "For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone"."

16. Defendants deny the allegations contained in paragraph 16 of the Complaint. Without limiting the foregoing, Defendants specifically deny that they knew anything about the Bullseye Event Group/GOATS ONLY tailgating or were involved in it or that Defendants attended it or that Defendants ever discussed it with Plaintiff or that Defendant recommended that Plaintiff engage in several large marketing ventures to create a national ad campaign, or that there was any "Rip" brand.

17. Defendants deny that Defendants made any recommendation to Plaintiff on which Plaintiff should rely, but Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 17 of the Complaint. Without limiting the foregoing, Defendants specifically deny that they knew anything about the Bullseye Event Group/GOATS ONLY tailgating or were involved in it or that Defendants attended it or that Defendants ever discussed it with Plaintiff or recommended that Plaintiff attend.

18. Defendants deny that Defendants made any representations or recommendations, but otherwise Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18 of the Complaint. Without limiting the foregoing, based on the fact that Plaintiff has not fulfilled its obligations under the Influencer Agreement as evidenced by, among other things, the fact that Defendants are informed and believe that Plaintiff never formed Newco and never took to market any products under Newco, Defendants specifically deny that Plaintiffs expended significant sums to promote the so-called "Rip" brand and Newco products. Further, Plaintiff's allegations of the use of the "Rip" brand are contrary to paragraph 6(e) of the Influencer Agreement stated: "For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone"."

19. Defendants admit that Defendants shot footage for a commercial in August 2023 and that the shoot date had to be rescheduled, but otherwise deny

the remaining allegations in paragraph 19 of the Complaint. Without limiting the foregoing, Defendants assert that the footage Defendants shot in August 2023 can be edited into a commercial if Plaintiff had fulfilled its obligations under the Influencer Agreement, which Plaintiff did not do.

20. Defendants deny the allegations contained in paragraph 20 of the Complaint.

21. Defendants deny the allegations contained in paragraph 21 of the Complaint. Without limiting the foregoing, based on the fact that Plaintiff has not fulfilled its obligations under the Influencer Agreement as evidenced by the fact that Plaintiff never formed Newco and never took to market any products under Newco, Defendants specifically deny that any big announcement could be made about Newco. Further, Plaintiff's allegations of an announcement for "Rip's Rub" are contrary to paragraph 6(e) of the Influencer Agreement stated: "For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone"."

22. Defendants deny the allegations contained in paragraph 22 of the Complaint. Without limiting the foregoing, Defendants note that Plaintiff's allegations of the use of the "Rip" brand are contrary to paragraph 6(e) of the Influencer Agreement stated: "For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone"."

23. Defendants deny that Defendants made any representations or recommendations, but otherwise Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 23 of the Complaint. Without limiting the foregoing, based on the fact that Plaintiff has not fulfilled its obligations under the Influencer Agreement as evidenced by, among other things, the fact that Plaintiff never formed Newco and never took to market any products under Newco, Defendants specifically deny that Plaintiffs ramped up production of the product, merchandise, and promotional items.

24. Defendants deny that Plaintiff paid for a private jet to transport Hauser to the Bourbon and Bonfire event, but otherwise Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 24 of the Complaint.

25. Defendants admit that Defendants did not have permission from Paramount to use the name, image, and likeness of his character, "Rip," but otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 25 of the Complaint. Without limiting the foregoing, Defendants note that Plaintiff's allegations of the use of the "Rip" brand are contrary to paragraph 6(e) of the Influencer Agreement stated: "For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone"."

26. Defendants deny the allegations contained in paragraph 26 of the Complaint.

27. Defendants deny the allegations contained in paragraph 27 of the Complaint.

28. Defendants deny the allegations contained in paragraph 28 of the Complaint. Without limiting the foregoing, Defendants note the following: (i) Plaintiff's allegations of the use of the "Rip" brand are contrary to paragraph 6(e) of the Influencer Agreement stated: "For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone"."; and (ii) Defendants were ready, willing, and able to perform under the Influencer Agreement, but were prevented from doing so by Plaintiff because Plaintiff failed to fulfill its obligations under the Agreement as evidenced by, among other things, the fact that it never formed Newco and never took to market any products under Newco.

29. Defendants admit to keeping to the $250,000 paid to Defendants under the Agreement, but otherwise deny the allegations contained in paragraph 29 of the Complaint. Without limiting the foregoing, Defendants note the following: (i) Plaintiff's allegations of the use of the "Rip" brand are contrary to paragraph 6(e) of the Influencer Agreement stated: "For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone"."; and (ii) Defendants were ready, willing, and able to

perform under the Influencer Agreement, but were prevented from doing so by Plaintiff because Plaintiff failed to fulfill its obligations under the Agreement as evidenced by, among other things, the fact that it never formed Newco and never took to market any products under Newco.

30. Defendants deny the allegations contained in paragraph 30 of the Complaint. Without limiting the foregoing, based on the fact that Plaintiff has not fulfilled its obligations under the Influencer Agreement as evidenced by, among other things, the fact that Plaintiff never formed Newco and never took to market any products under Newco, Defendants specifically deny that Plaintiffs ramped up production of the product, merchandise, and promotional items.

## COUNT I

## ALLEGATION OF BREACH OF CONTRACT

31. Defendants repeat and reallege as if fully set forth herein its responses to the allegations in paragraphs 1 to 30 of the Complaint.

32. Defendants admit that Defendants entered into the Agreement with Plaintiff, but otherwise deny the allegations contained in paragraph 32 of the Complaint. Without limiting the foregoing, Defendants note the following: (i) Plaintiff's allegations of the use of the "Rip" brand are contrary to paragraph 6(e) of the Influencer Agreement stated: "For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone"."; and (ii) Defendants were ready, willing, and able to perform under

the Influencer Agreement, but were prevented from doing so by Plaintiff because Plaintiff failed to fulfill its obligations under the Agreement as evidenced by, among other things, the fact that it never formed Newco and never took to market any products under Newco.

33. Defendants deny the allegations contained in paragraph 33 of the Complaint.

Defendants note that Plaintiff included an unnumbered paragraph that is nothing more than a prayer for relief and damages, which does not contain any factual allegations and, therefore, does not require a response. To the extent a response is required, Defendants deny each and every allegation contained in said prayer for relief and further deny that Plaintiff is entitled to any of the relief requested or any other relief under any other theory.

## COUNT II

## ALLEGATION OF PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE

34. Defendants repeat and reallege as if fully set forth herein its responses to the allegations in paragraphs 1 to 33 of the Complaint.

35. Defendants admit the allegations contained in paragraph 35 of the Complaint. but otherwise deny the allegations contained in paragraph 29 of the Complaint. Without limiting the foregoing, Defendants note that Defendants were ready, willing, and able to perform under the Influencer Agreement,

but were prevented from doing so by Plaintiff because Plaintiff failed to fulfill its obligations under the Agreement as evidenced by, among other things, the fact that it never formed Newco and never took to market any products under Newco.

36. Defendants deny the allegations contained in paragraph 36 of the Complaint. Without limiting the foregoing, Defendants note that Plaintiff's allegations of the use of the "Rip" brand are contrary to paragraph 6(e) of the Influencer Agreement stated: "For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone"."

37. Defendants admit that Defendants entered into the Influencer Agreement with Plaintiff and that Plaintiff paid CKH $250,000 as required by the Influencer Agreement, but otherwise Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 37 of the Complaint. Without limiting the foregoing, based on the fact that Plaintiff has not fulfilled its obligations under the Influencer Agreement as evidenced by, among other things, the fact that Plaintiff never formed Newco and never took to market any products under Newco, Defendants specifically deny that Plaintiffs spent significant sums on promoting Newco or its products.

38. Defendants deny that Plaintiff paid for a private jet to transport Hauser to the Bourbon and Bonfire event and Defendants deny that Defendants made any representations or recommendations, but otherwise Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations

in paragraph 38 of the Complaint. Without limiting the foregoing, based on the fact that Plaintiff has not fulfilled its obligations under the Influencer Agreement as evidenced by, among other things, the fact that Plaintiff never formed Newco and never took to market any products under Newco, Defendants specifically deny that Plaintiffs spent significant sums on promoting Newco or its products.

Defendants note that Plaintiff included an unnumbered paragraph that is nothing more than a prayer for relief and damages, which does not contain any factual allegations and, therefore, does not require a response. To the extent a response is required, Defendants deny each and every allegation contained in said prayer for relief and further deny that Plaintiff is entitled to any of the relief requested or any other relief under any other theory.

## COUNT III

## ALLEGATION OF FRAUD IN THE INDUCEMENT

39. Defendants repeat and reallege as if fully set forth herein its responses to the allegations in paragraphs 1 to 38 of the Complaint.

40. Defendants deny the allegations contained in paragraph 40 of the Complaint. Without limiting the foregoing, Defendants note that Plaintiff's allegations of the use of the "Rip" brand are contrary to paragraph 6(e) of the Influencer Agreement stated: "For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone"."

41. Defendants admit that Defendants entered into the Influencer Agreement with Plaintiff and that Plaintiff paid CKH the first payment of $250,000 as required by the Influencer Agreement, but otherwise Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 41 of the Complaint. Without limiting the foregoing, based on the fact that Plaintiff has not fulfilled its obligations under the Influencer Agreement as evidenced by, among other things, the fact that Plaintiff never formed Newco and never took to market any products under Newco, Defendants specifically deny that Plaintiffs spent significant sums on promoting Newco or its products.

42. Defendants deny that Plaintiff paid for a private jet to transport Hauser to the Bourbon and Bonfire event and Defendants deny that Defendants made any representations or recommendations, but otherwise Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 42 of the Complaint. Without limiting the foregoing, based on the fact that Plaintiff has not fulfilled its obligations under the Influencer Agreement as evidenced by, among other things, the fact that Plaintiff never formed Newco and never took to market any products under Newco, Defendants specifically deny that Plaintiffs spent significant sums on promoting Newco or its products.

43. Defendants deny the allegations contained in paragraph 43 of the Complaint. Without limiting the foregoing, Defendants note that Plaintiff's allegations of the use of the "Rip" brand are contrary to paragraph 6(e) of the

Influencer Agreement stated: "For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone"."

44. Defendants deny the allegations contained in paragraph 44 of the Complaint. Without limiting the foregoing, Defendants note that Plaintiff's allegations of the use of the "Rip" brand are contrary to paragraph 6(e) of the Influencer Agreement stated: "For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone"."

45. Defendants deny the allegations contained in paragraph 45 of the Complaint. Without limiting the foregoing, Defendants note the following: (i) Plaintiff's allegations of the use of the "Rip" brand are contrary to paragraph 6(e) of the Influencer Agreement stated: "For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone"."; and (ii) Defendants were ready, willing, and able to perform under the Influencer Agreement, but were prevented from doing so by Plaintiff because Plaintiff failed to fulfill its obligations under the Agreement as evidenced by, among other things, the fact that it never formed Newco and never took to market any products under Newco.

46. Defendants deny the allegations contained in paragraph 46 of the Complaint. Without limiting the foregoing, Defendants note that Plaintiff's allegations of the use of the "Rip" brand are contrary to paragraph 6(e) of the

Influencer Agreement stated: "For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone"."

47. Defendants deny the allegations contained in paragraph 47 of the Complaint. Without limiting the foregoing, Defendants note the following: (i) Plaintiff's allegations of the use of the "Rip" brand are contrary to paragraph 6(e) of the Influencer Agreement stated: "For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone"."; and (ii) Defendants were ready, willing, and able to perform under the Influencer Agreement, but were prevented from doing so by Plaintiff because Plaintiff failed to fulfill its obligations under the Agreement as evidenced by, among other things, the fact that it never formed Newco and never took to market any products under Newco.

48. Defendants deny the allegations contained in paragraph 48 of the Complaint. Without limiting the foregoing, based on the fact that Plaintiff has not fulfilled its obligations under the Influencer Agreement as evidenced by, among other things, the fact that Plaintiff never formed Newco and never took to market any products under Newco, Defendants specifically deny that Plaintiffs spent significant sums on promoting Newco or its products.

Defendants note that Plaintiff included an unnumbered paragraph that is nothing more than a prayer for relief and damages, which does not contain any factual allegations and, therefore, does not require a response. To the extent a

response is required, Defendants deny each and every allegation contained in said prayer for relief and further deny that Plaintiff is entitled to any of the relief requested or any other relief under any other theory.

**COUNT IV**

**ALLEGATION OF UNJUST ENRICHMENT**

49. Defendants repeat and reallege as if fully set forth herein its responses to the allegations in paragraphs 1 to 48 of the Complaint.

50. The statements in paragraph 6 of the Complaint do not contain any allegations. Defendants deny that Defendants engaged in any misconduct or are liable to Plaintiff for any allegations or that Plaintiff is entitled to any of the relief requested or any other relief under any other theory.

51. Defendants admit that Plaintiff paid CKH the first payment of $250,000 as required by the Influencer Agreement, but otherwise deny the remaining allegations in paragraph 51 of the Complaint.

52. Defendants admit that Plaintiff paid CKH the first payment of $250,000 as required by the Agreement, but otherwise deny the remaining allegations in paragraph 52 of the Complaint.

53. Defendants that Plaintiff paid CKH the first payment of $250,000 as required by the Agreement, but otherwise deny the remaining allegations in paragraph 53 of the Complaint. Without limiting the foregoing, Defendants deny that they had any obligation whatsoever to compensate Plaintiff for anything.

54. Defendants deny the allegations contained in paragraph 54 of the Complaint.

55. Defendants deny the allegations contained in paragraph 55 of the Complaint.

56. Defendants deny the allegations contained in paragraph 56 of the Complaint.

Defendants note that Plaintiff included an unnumbered paragraph that is nothing more than a prayer for relief and damages, which does not contain any factual allegations and, therefore, does not require a response. To the extent a response is required, Defendants deny each and every allegation contained in said prayer for relief and further deny that Plaintiff is entitled to any of the relief requested or any other relief under any other theory.

**ALLEGATION OF RESPONDEAT SUPERIOR LIABILITY**

57. Defendants admit that Hauser is the principal of CKH, but otherwise deny the remaining allegations in paragraph 57 of the Complaint.

Defendants note that Plaintiff included an unnumbered paragraph that is nothing more than a prayer for relief and damages, which does not contain any factual allegations and, therefore, does not require a response. To the extent a response is required, Defendants deny each and every allegation contained in said prayer for relief and further deny that Plaintiff is entitled to any of the relief requested or any other relief under any other theory.

## GENERAL DENIAL

Each and every allegation of the Complaint not specifically admitted is hereby denied.

## PLAINTIFFS' JURY DEMAND

Defendants hereby demand a jury trial on claims properly triable to a jury.

## ANSWER TO PRAYER FOR RELIEF

The prayer for relief does not contain any factual allegations and, therefore, does not require a response. To the extent a response is required, Defendants deny that Plaintiffs are entitled to any of the relief requested or any other relief under any other theory.

## ADDITIONAL DEFENSES

Defendants deny any allegations not specifically responded to above, whether expressed, implied, or contained in headings or footnotes appearing in the Complaint.

Without assuming any burden of proof, persuasion, or production not otherwise legally assigned to it as to any element of Plaintiff's claims, and without waiving and hereby expressly reserving the right to assert any and all such defenses at such time and to such extent as discovery and factual developments establish a basis therefore, Defendants raise the following additional defenses:

1. Plaintiff's Complaint fails, in whole or in part to state a claim upon which relief may be granted because it fails to adequately plead facts (and none exist) to support its theories of liability concerning Defendants, including but not limited to Plaintiffs' claims or implications that: (i) Plaintiff was defrauded; (ii) Defendants made any misrepresentations to Plaintiff that induced Plaintiff to enter the Influencer Agreement; and (iii) that the Plaintiff reasonably relied on any purported material misrepresentation or omission in connection with any agreement at issue herein.

2. Plaintiff's promissory estoppel/detrimental reliance and fraud in the inducement claims fail, in whole or in part, due to the existence of an enforceable written contract and for failure to plead fraud with specificity as required under Fed. R. Civ. P. 9(b), namely, due to Plaintiff's failure to identify any of the Defendants purportedly making and/or omitting material representations, as well as when, where, how, and to whom every alleged fraudulent representation was made or material fact omitted, the fraudulent intent of Defendants, the fraudulent scheme, and the alleged injury resulting from the alleged fraud. Plaintiff's "grouping" of Defendant's alleged agents and representatives and their failure to differentiate any conduct falls far short of what is required for pleading claims.

3. Plaintiff's alleged "reliance" was not reasonable based upon, among other factors, the following: (i) Defendants never made any

representation that the "Rip" name and likeness could be used by Newco; (ii) None of Defendants' authorized agents or representatives made any representation that the "Rip" name and likeness could be used by Newco; (iii) Defendants were always ready willing and able to perform under the Influencer Agreement as exemplified by Defendants' expenditure of money to pay for filming of Hauser mixing spices with the spice master and other footage for use in a campaign for NewCo's products; and (iv) paragraph 6(e) of the Influencer Agreement stated: "For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone"."

4. Plaintiff's claims fail under the doctrine of first breach.

5. Plaintiff failed to fulfill its contractual obligations under the Agreement, including but not limited to providing and an opportunity to cure. Plaintiff's claims are barred by its failure to fulfill one or more conditions precedent.

6. Paragraph 6(e) of the Influencer Agreement stated: "For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone"." Plaintiff's claims, in particular those regarding its allegations about a non-existent "Rip" brand, are barred by the doctrines of illegality and waiver.

7. Plaintiff's claims are barred, in whole or in part, by the doctrine of laches, waiver, equitable and/or promissory estoppel, in pari delicto, bad faith,

unclean hands, ratification, acquiescence, and/or other related equitable doctrines.

8. Plaintiffs' unjust enrichment claim fails because Plaintiffs admit that a contract exists concerning the subject matter of this claim, which precludes such claim as a matter of Tennessee law.

9. Plaintiffs' damages, if any, were caused by their own actions, omissions, misconduct, and/or negligence in how they performed or failed to perform under the Influencer Agreement.

10. Plaintiff's claims fail to state facts sufficient to state a claim that would support an award of actual or compensatory damages, punitive damages, costs, attorney's fees, or expenses. Defendants deny they are liable for any purported damages, or that it proximately caused any damages. To the extent Plaintiff actually suffered recoverable damages—and Defendants submit Plaintiff has not—Plaintiff's claims are barred in whole or in part by their failure to mitigate, *i.e.*, Plaintiffs failed to take reasonable action to minimize any damages allegedly sustained as a result of the facts alleged in the Complaint and are therefore barred from recovering any damages which might reasonably have been avoided. In addition, or in the alternative, some or all of Plaintiff's claimed damages were caused by their own acts or omissions or the acts or omissions of third parties over whom Defendants had no control and for whose actions Defendants have no responsibility.

11. Plaintiff has failed to state a claim entitling it to punitive damages against Defendants pursuant to *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992). Plaintiff is not entitled to punitive damages in a breach of contract case. Further, Defendants submit that the claim for punitive damages cannot be maintained because it violates the United States and Tennessee Constitutions, and/or the common law or the public policies of the United States and/or the State of Tennessee.

12. In addition to constitutional and common law protections, Defendants assert the limitations under the Tennessee statutory limitation on punitive damages to the fullest extent allowed under law.

13. To the extent any consideration is given to Plaintiff's request for punitive damages, Defendants are entitled to a bifurcated proceeding. Further, Defendants preserve the defense that Plaintiff does not have a constitutional right to a jury trial on the punitive damages claim.

14. Plaintiff fails to state any claim against Defendant Hauser in his individual capacity. Hauser is not a signatory to the Agreement.

15. To the extent that any allegations in Defendant CKH's Counterclaim comprise cognizable affirmative defenses, Defendants incorporates such allegations by reference herein.

16. Defendants would assert those defenses set forth or contemplated by Rules 8 and 12 of the Federal Rules of Civil Procedure as if fully stated

herein, as the applicability of those defenses, if any, will be determined during discovery and amendments to the pleadings will occur thereafter if necessary. Defendants assert, and expressly reserve all rights with respect to, all counterclaims, cross-claims, third-party claims, or contribution claims that may be revealed during the course of discovery. Defendants also assert and expressly reserve all rights with respect to all other defenses that may be revealed during the course of discovery. Defendants expressly reserve the right to amend and/or supplement this Answer.

## RELIEF REQUESTED

WHEREFORE, having fully answered the Complaint, Defendants pray that this Court dismiss this action with prejudice; that Plaintiff takes nothing by way of the Complaint; that judgment be entered in Defendants' favor; and that the Court award Defendants their costs, expert fees, and attorneys' fees incurred in defending this action, as permitted by law and/or contract, and grant Defendants any further relief that this Court deems just and proper.

## COUNTER-COMPLAINT AND THIRD-PARTY COMPLAINT

COMES NOW Defendant/Counter-Plaintiff CKH CORPORATION ("CKH"), by and through the undersigned Counsel, and asserts the following claims against Plaintiff/Counter-Defendant Xtreme Concepts, Inc. and Third-Party Defendant Landon Ash:

## PARTIES

1. CKH is a California common stock corporation with a principal place of business in Beverly Hills, California.

2. CKH is informed and believes that Plaintiff/Counter-Defendant Xtreme Concepts, Inc., is a Delaware corporation with a principal place of business in Birmingham, Alabama which CKH is informed and believes regularly does business in Nashville, Tennessee.

3. CKH is informed and believes that Third-Party Defendant Landon Ash ("Ash") is a citizen and resident of the state of Alabama. On information and belief, Ash is the CEO of Xtreme Concepts, and directed Xtreme Concepts' actions in connection with the actions described herein, including but not limited to the negotiation and execution of the Influencer Agreement and Xtreme Concepts' breaches of the Influencer Agreement.

4. CKH submits that this Court has subject matter jurisdiction over the claims asserted herein and personal jurisdiction over the Counter-Defendant and Third-Party Defendant and venue as to the claims asserted.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), in that this is a civil action between CKH, which is a California corporation, and Xtreme, which CKH is informed and believes is an Alabama business entity, and the amount in controversy exceeds $75,000, exclusive of

interest and costs. Moreover, Third Party Defendant Landon Ash, on information and belief, is a citizen and resident of the state of Alabama, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(3) because paragraph 15 of the Influencer Agreement provides for venue in Davidson County, Tennessee.

**FACTUAL BACKGROUND**

7. Hauser is a well-known actor particularly known for his portrayal of the role of "Rip" on the hit television series, *Yellowstone*. CKH is a loan-out corporation through which Hauser provides his acting, producing, directing and other entertainment services. Hauser and CKH together are referred to as "Defendants."

8. Xtreme is a company owned by Landon Ash, a venture capitalist who owns other companies, including a spice company called Musket Powder Seasonings. CKH is informed and believes that Ash operates all or nearly all of his business through Xtreme.

9. In late 2022, Hauser was introduced to Ash by non-party Brad Keltner ("Keltner"). Keltner was not representing CKH or Hauser, and CKH is informed and believes that Keltner was not representing Xtreme.

10. At approximately this time, soon after meeting, Hauser and Ash discussed an endorsement deal between Xtreme and Hauser, through CKH, in which

Hauser would be paid a certain amount of money in exchange for promoting a spice business on social media.

11. To facilitate negotiations, Hauser introduced Xtreme to his entertainment lawyer to negotiate the endorsement deal. As the negotiations progressed over the next few months, the Parties agreed a new company would be formed ("NewCo") wherein CKH and Xtreme would each own 50% of NewCo. The parties intended that NewCo would create, among other products, a special food seasoning.

12. Furthermore, as part of the negotiations, Plaintiff asked whether Defendants were permitted to use Hauser's *Yellowstone* character, "Rip," in connection with NewCo or the products. Defendants asked for such permission from the producers of *Yellowstone* and were told no.

13. Defendants informed Plaintiff of the denial of the right to use Hauser's *Yellowstone* character, "Rip," in connection with NewCo or the products. In response, Ash specifically said that he did not care because Hauser was the focus and they would call the spice "Hauser's Rub."

14. On May 17, 2023, CKH and Xtreme entered into an Influencer Marketing Agreement (the "Influencer Agreement") which included, among other terms, the following:

a. Xtreme will compensate CKH the guaranteed amount of One Million Five Hundred Thousand on a "pay-or-play" basis.

b. Xtreme was to manage the day-to-day operations of NewCo, including, without limitation, its formation, contributing the products (including 5 of Xtreme's existing spices), and financing NewCo;

c. CKH and Hauser would perform various promotional services for NewCo and the products using Hauser's image; and

d. The prevailing party in any dispute is entitled to recovery of their attorney fees incurred in the event of a dispute.

15. In light of *Yellowstone*'s producers rejecting Defendants' request to use the "Rip" character, the Influencer Agreement contained the following provision at the end of Paragraph 6(e) of the Influencer Agreement, which sentence was even underlined to emphasize the importance of this prohibition:

> For avoidance of doubt, there shall be no use by XTREME of images of INFLUENCER in character as "Rip" from "Yellowstone".

16. Throughout the negotiations, Xtreme and Ash made clear that Ash would take all actions to ensure that NewCo would be formed, have the resources to perform under the Influencer Agreement, and the products to sell. As a result, CKH placed its trust in Xtreme and Ash and granted Xtreme and Ash control over NewCo subject to certain limited approval rights for Hauser.

17. As required by the Influencer Agreement, Xtreme paid CKH the first payment of $250,000.

18. Over the next three months, after rescheduling the first shoot, Hauser and his film crew traveled to Livingston, Montana in August 2023 and met with Xtreme and a spice master to mix the spices. Hauser worked with the spice master and Ash to mix the first spice for NewCo while Hauser's film crew shot footage of the mixing process. Hauser paid for the film crew out of the first $250,000 payment from Xtreme under the Influencer Agreement.

19. That same month, August 2023, Hauser was participating in the Bourbon and Bonfire Event which event was organized by Keltner, the third party who introduced Hauser and Xtreme. While Hauser participated in the event for a fee, he did not plan the event or run it and Hauser is informed and believes that he is owed money from it.

20. When Hauser arrived at the Bourbon and Bonfire event, he was surprised to see Ash and Xtreme there. Hauser is informed and believes that Xtreme paid a sponsorship for the Bourbon and Bonfire Event at the request of Keltner with whom Ash is a friend and business associate. Hauser never requested Xtreme to participate in the event.

21. Hauser was even more shocked that Xtreme had made up shirts, dog bowls, signs, and posters with Hauser's image on them without Hauser's approval as was required by the Influencer Agreement to use Hauser's image.

22. Thereafter, nothing happened despite Hauser making multiple efforts to contact Ash and Xtreme. Indeed, Xtreme and Ash ghosted Hauser. Despite it being its express obligations under the Agreement, Xtreme did not take any action to form NewCo or finance NewCo. Also, Xtreme never took any action relating to products for NewCo despite Xtreme being obligated under the Influencer Agreement to contribute five of Xtreme's existing spices to NewCo. Xtreme never manufactured, marketed, or distributed any products by NewCo.

23. CKH and Hauser were, at all times, ready, willing, and able to perform under the Influencer Agreement once Xtreme had created a company that had products for which Hauser was to promote.

24. In January 2024, Xtreme contacted Hauser's entertainment lawyer requesting a way out of the Influencer Agreement. While foregoing the remaining $1.25 million owed on the "guaranteed" fee on a "pay-or-play" basis would have an impact on CKH, CKH was willing to agree to allow Xtreme out of the Influencer Agreement in exchange for Hauser keeping the $250,000 and doing a social media post on behalf Xtreme.

25. Rather than responding to a fair proposal, Xtreme sent a letter demanding return of the $250,000 plus additional alleged damages supposedly incurred by Xtreme relating to the unformed NewCo and non-distribution of products.

26. CKH responded through its entertainment lawyer via email stating that Xtreme had not fulfilled its obligations under the Influencer Agreement by, among other things, never forming Newco and never taking to market any products under Newco, which failure prevented CKH and Hauser from performing any promotional services under the Influencer Agreement. CKH further stated that Xtreme owes it the full $1.5 million guaranteed, pay-or-play basis.

27. For the next 15 months the Parties engaged in negotiations to restructure the Influencer Agreement. Xtreme would often become non-responsive for months at a time and then seek to change previously agreed upon deal terms. Then, Xtreme abruptly filed this action against CKH and Hauser.

## COUNT I

## BREACH OF CONTRACT (Against Xtreme)

28. CKH repeats and realleges as if fully set forth herein its foregoing averments.

29. CKH and Xtreme entered the Influencer Agreement. Under the Influencer Agreement, CKH and Hauser were obligated to perform various promotional services for NewCo and the products using Hauser's image. Under the Influencer Agreement, Xtreme was obligated to: (i) pay Hauser a guaranteed, pay-or-play fee of $1.5 million; (ii) manage the day-to-day operations of NewCo (including its formation), contributing the products (including 5 of Xtreme's

existing spices), arrange for all manufacturing of products, and covering all costs of marketing, manufacturing, distribution as well other working capital.

30. Xtreme breached the Influencer Agreement by producing marketing materials containing Hauser's image without permission.

31. Xtreme never provided CKH any materials regarding the formation of NEWCO as required under the Influencer Agreement. Xtreme never contributed its existing spices into NEWCO as required under the Influencer Agreement, and has not accounted to CKH for the sales of those spices.

32. At all times, CKH was ready, willing, and able to perform under the Influencer Agreement once Xtreme had created a company and products for which Hauser was to promote. Indeed, Hauser with his film crew traveled to Livingston, Montana in August 2023, and met with Xtreme and a spice master to mix the spices. Hauser worked with the spice master and Ash to mix the first spice for NewCo while Hauser's film crew shot footage of the mixing process.

33. Xtreme breached the Influencer Agreement by, among other things: (i) failing to pay CKH the remaining $1.25 million owes on the guaranteed, pay-or-play fee; (ii) not forming, managing, or financing NewCo; (iii) not contributing any products to NewCo; and (iv) never manufacturing, marketing, or distributing any products for NewCo.

34. Xtreme is liable for breach of contract.

35. Xtreme is obligated to indemnify, defend and hold harmless CKH from and against "any losses, costs, damages, claims or expenses, including reasonable attorney's fees" incurred in connection with this dispute under the indemnification provision in Paragraph 10(b) of the Influencer Agreement.

36. In addition, Xtreme's actions violate the implied covenant of good faith and fair dealing implicit in any contract.

37. Xtreme is liable for any loss or damages, subject to proof, suffered by CKH as a result of Xtreme's breaches and misconduct. CKH cannot ascertain at this time the full nature, extent or amount of damages suffered as a result of Xtreme's misconduct, but, Counter-Plaintiff is informed and believes, and on that basis alleges that it is not less than $1,250,000 for nonpayment under the Influencer Agreement, together with CKH's out-of-pocket filming expenses, expectancy damages, and all other losses, costs, damages, claims or expenses, including reasonable attorney's fees.

38. CKH is informed and believes and thereon alleges that the aforementioned acts of Xtreme were willful, oppressive, fraudulent, and/or malicious. CKH is therefore entitled to actual, punitive and/or exemplary damages.

**COUNT II**

**BREACH OF FIDUCIARY DUTY (Against Xtreme and Ash)**

39. CKH repeats and realleges as if fully set forth herein its foregoing averments.

40. Under the Influencer Agreement, CKH and Xtreme were to perform their obligations as 50/50 co-owners of NewCo which Xtreme was supposed to form, manage, and finance. Xtreme was the promoter of NewCo and the intended co-owner responsible for its management and operations. Xtreme and Ash made clear that Xtreme and Ash would take all actions to ensure that NewCo would be formed, have the resources to perform under the Influencer Agreement, and the products to sell. Given the foregoing management role by Xtreme and Ash over all affairs of NewCo, it is clear that CKH reposed special trust and confidence in Xtreme and Ash, both of whom assumed that responsibility for the affairs of NewCo. As such, NewCo and Ash owed CKH fiduciary duties.

41. Xtreme and Ash breached their fiduciary duties by: (i) failing to pay CKH the remaining $1.25 million owed on the guaranteed, pay-or-play fee; (ii) not forming, managing, or financing NewCo; (iii) not contributing any products to NewCo; and (iv) never manufacturing, marketing, or distributing any products for NewCo. Xtreme and Ash also breached the fiduciary duties by Xtreme's request to be let out of the Influencer Agreement and then dragging out negotiations for 15 months before suing CKH and Hauser.

42. Xtreme and Ash are liable for any loss or damages, subject to proof, suffered by CKH as a result of their misconduct. CKH cannot ascertain at this time the full nature, extent or amount of damages suffered as a result of their misconduct,

but, Counter-Plaintiff is informed and believes, and on that basis alleges that it is not less than $1,250,000.

43. CKH is informed and believes and thereon alleges that the aforementioned acts of Xtreme were willful, oppressive, fraudulent, and/or malicious. CKH therefore is entitled to actual, punitive and/or exemplary damages.

## COUNT III

## (ALTERNATIVE) INDUCEMENT OF BREACH OF FIDUCIARY DUTY (Against Ash)

44. CKH repeats and realleges as if fully set forth herein its foregoing averments.

45. Under the Influencer Agreement, CKH and Xtreme were to perform their obligations as 50/50 co-owners of NewCo which Xtreme was supposed to form, manage, and finance. Xtreme was the promoter of NewCo and the intended co-owner responsible for its management and operations. Given the foregoing management role by Xtreme and Ash over all affairs of NewCo, it is clear that CKH reposed special trust and confidence in Xtreme and Ash, both of whom assumed that responsibility for the affairs of NewCo. As such, NewCo and Ash owed CKH fiduciary duties.

46. Ash is the corporate officer for Xtreme who should have taken or directed to be taken all actions to ensure that NewCo would be formed, have the resources to perform under the Influencer Agreement, and the products to sell. But,

Ash failed to take any such actions and thus induced Xtreme to breach its fiduciary duties by: (i) failing to pay CKH the remaining $1.25 million owes on the guaranteed, pay-or-play fee; (ii) not forming, managing, or financing NewCo; (iii) not contributing any products to NewCo; and (iv) never manufacturing, marketing, or distributing any products for NewCo. Ash also induced Xtreme to breach its fiduciary duties by requesting to be let out of the Influencer Agreement and then dragging out negotiations for 15 months before suing CKH and Hauser.

47. Ash is liable for any loss or damages, subject to proof, suffered by CKH as a result of Ash's misconduct. CKH cannot ascertain at this time the full nature, extent or amount of damages suffered as a result of Ash's misconduct, but, Counter-Plaintiff is informed and believes, and on that basis alleges that it is not less than $1,250,000.

48. CKH is informed and believes and thereon alleges that the aforementioned acts of Ash were willful, oppressive, fraudulent, and/or malicious. CKH therefore is entitled to actual, punitive and/or exemplary damages.

## JURY DEMAND

Counter-Defendant demands a jury on all issues in its Counterclaim properly triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, CKH prays for judgment as follows:

**ON THE FIRST CAUSE OF ACTION**

1. For general, special, incidental and consequential damages according to proof at trial;

2. For punitive and exemplary damages;

**ON THE SECOND CAUSE OF ACTION**

3. For general, special, incidental and consequential damages according to proof at trial;

4. For punitive and exemplary damages;

**ON THE THIRD CAUSE OF ACTION**

5. For general, special, incidental and consequential damages according to proof at trial;

6. For punitive and exemplary damages;

**ON ALL CAUSES OF ACTION**

7. For pre- and post-judgment interest on the sums awarded as damages, at the legal rate thereon;

8. For attorney's fees as may be allowed by law or contract incurred in this action;

9. For costs as may be allowed by law or contract, incurred in this action; and

For such other and further relief which may be deemed just and proper.

Respectfully submitted,

/s/ Bryan M. Sullivan (by RSH w/perm.)
Bryan M. Sullivan (Cal. Bar No. 209743)
Early Sullivan Wright Gizer & McRae LLP
(323) 301-4660
6420 Wilshire Blvd., 17th Floor
Los Angeles, California 90048
bsullivan@earlysullivan.com
(*Pro hac* application to be submitted)

/s/ Robb S. Harvey
Robb S. Harvey (TN BPR No. 011519)
HOLLAND & KNIGHT, LLP
511 Union Street Suite 2700
Nashville, TN 37219
(615) 244-6380
Robb.Harvey@hklaw.com

*Attorneys for Specially appearing Defendants CKH Corporation f/s/o Cole Hauser and Cole Hauser*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing is being sent via electronic mail and first class U.S. Mail on this 4th day of September, 2025, to:

Justin G. Williams
Tanner & Guin, LLC
2711 University Blvd, Suite 201
Tuscaloosa, AL 35401
justin@tannerguin.law

*/s/ Robb S. Harvey*